**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| STACEY POTTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08-cv-674-GKF-TLW |
| ) | |
| SYNERLINK CORPORATION, f/k/a ) | |
| PREFERRED REPS, INC., d/b/a ) | |
| PREFERRED SALES AGENCY, LTD., ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Before the Court is plaintiff's Motion for Default as a Sanction Against Defendants for Defendants' Fraud on the Court. (Dkt. # 77). Defendant filed a response (dkt. # 98), and plaintiff filed a reply (dkt. # 109). On April 28, 2010, the Court conducted an evidentiary hearing. (Dkt. # 140). On April 30, 2010, the Court notified the parties that plaintiff's motion for sanctions would be granted in part and denied in part and that plaintiff's request for default judgment would be denied.[1] (Dkt. # 142).

**Background**

After being fired by defendant, plaintiff filed this action asserting claims for discrimination under Title VII of the Civil Rights Act of 1964 and for unpaid wages under Okla. Stat. tit. 40, § 165.3(A). (Dkt. # 2). In her Complaint, Plaintiff asserts that "[t]he reason for the firing was that [defendant claimed she] was 'unhappy' in her job." Id. at 3-4. Plaintiff alleges that this reason was a pretext "for discrimination for [p]laintiff being too successful and too aggressive for a woman." Id. at 4. In her Motion for Sanctions, plaintiff further alleges that

---

[1] A party's request for a case-dispositive sanction, such as the entry of a default judgment, does not determine the scope of a magistrate judge's authority. Gomez v. Martin Marietta Corp., 50 F.3d 1511 (10th Cir. 1995). If the magistrate judge does not impose a dispositive sanction, the order falls under Fed. R. Civ. P. 72(a) rather than 72(b). Id.

defendant's President, Jim Tarpley, fabricated a set of hand written notes from counseling sessions with plaintiff "as important evidentiary support for the claim that [plaintiff] was a bad employee who needed to be fired." (Dkt. # 77 at 1). Mr. Tarpley's notes are at the center of the present controversy.

During Mr. Tarpley's initial deposition, he testified that he prepared various hand written notes contemporaneously with meetings he had with plaintiff during her employment. (Dkt. # 78-1). After receiving Mr. Tarpley's notes, plaintiff asked an expert forensic examiner to review them. (Dkt. # 78-2). The examiner, Mr. Arthur D. Linville, inspected Mr. Tarpley's notes using an Electrostatic Detection Apparatus (ESDA) and discovered indentations on the top of most of the pieces of paper on which the notes were written. Id. Mr. Linville concluded that these indentations were created by a pen or pencil while someone wrote on another piece of paper that was lying on top of the page that contained the indentations.[2] Id. Mr. Linville then "performed lifts of [the] indented writing" using the ESDA. Id. Based on the lifts, Mr. Linville re-created the text which was written on the top page and indented onto the page below it. Id. Mr. Linville testified that he was able to match his results to many of Mr. Tarpley's notes. Id. From this matching process, Mr. Linville determined the order in which Mr. Tarpley's notes were actually written. Id. This order does not match the dates contained on the notes, leading Mr. Linville to conclude that many of the notes were actually written on a date that was after the date on the notes; that is, the notes were not taken contemporaneously. Id.

When confronted with the forensic examiner's findings, Mr. Tarpley, through his personal attorney, "clarified" his testimony, stating that although he did prepare a set of notes "reasonably contemporaneously with particular events or communications," he later rewrote at

---

[2] For example, when a person writes on the first page of a legal pad, an indentation is made on the second page and possibly the third or even the forth page.

least some of those notes, consistent with a note-taking habit he had developed in elementary school. (Dkt. # 98-7). It is the rewritten notes that defendant produced to plaintiff. The original notes no longer exist, since, according to Mr. Tarpley, he destroyed the original notes after making the copies. Defendant's expert witness testified only as to the timing of the creation of the rewritten notes, stating that the rewritten notes were likely created at various times from June, 2007 through February, 2008, a period of time that begins close to the date on which plaintiff was terminated and ends prior to the filing of this lawsuit. (Dkt. # 98-1). Other than the testimony of defendant's expert witness, the facts are inconclusive with respect to when Mr. Tarpley created his "original" set of notes, when he rewrote those notes, or when he destroyed the originals. In addition, there is no evidence contradicting Mr. Tarpley's testimony regarding the reason that he destroyed his original notes.

## Analysis

Generally, a court will not enter default judgment as a sanction unless a party "commits perjury or . . . doctors evidence" that "relates to the pivotal or 'linchpin' issue in the case." Quantum Comms. Corp. v. Star Broadcasting, Inc., 473 F.Supp.2d 1249, 1269 (S.D.Fla. 2007). The parties agree that a district court should evaluate five factors before imposing the sanction of dismissal or default judgment: (1) the degree of prejudice to the other party; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action could result from non-compliance; and (5) the efficacy of lesser sanctions. See (Dkt. ## 77, 98) (citing Garcia v. Berskshire Life Ins. Co. of Amer., 569 F.3d 1174, 1179 (10th Cir. June 10, 2009)). Plaintiff additionally cites the following quote from Pope v. Federal Express Corp., 138 F.R.D. 675, 683 (W.D. Mo. 1990):

> Dismissal [or default judgment], to be sure, is among the harshest of sanctions. However, the severity of the misdeed here compels such harshness. The

<u>manufactured document would have been the linchpin of Plaintiff's [or Defendant's] case.</u>  Permitting this lawsuit to proceed would be an open invitation to abuse the judicial process.  Litigants would infer they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues.  Litigants must know that the courts are not open to persons who would seek justice by fraudulent means.

<u>Id.</u> (emphasis added).

As to the first of the five factors, plaintiff asserts that she has been prejudiced, because "[s]he has had to incur great legal expense, including the retention of a forensic expert, to combat Mr. Tarpley's litigation misconduct.  The notes he fabricated are at the heart of the defense and were created to directly refute Plaintiffs claims.  If this case were allowed to go forward to trial, every piece of evidence offered by Defendants must be questioned about its genuineness."  (Dkt. # 77 at 15-16).  Defendant counters that the notes were never submitted as evidence and were not attached to defendant's Position Statement or its pending Motion for Summary Judgment.  (Dkt. # 98 at 7).  The Court can find no indication in the record that defendant intended to rely on the rewritten notes to support its case.  Such a lack of intent is understandable, since the rewritten notes do little to assist either side in this litigation.  Thus, the rewritten notes would certainly not have been the "linchpin" of defendant's case, and plaintiff's position that the rewritten notes "are at the heart of the defense" is not persuasive.  On the other hand, it is clear that plaintiff has incurred substantial expense in attempting to determine the authenticity and accuracy of the rewritten notes.  These expenses were incurred solely as a result of defendant's incomplete discovery responses, and Mr. Tarpley's misleading deposition testimony (as is addressed below).  From a monetary and time perspective, plaintiff has been prejudiced.

As to the second and third factors, plaintiff argues that Mr. Tarpley's conduct "threatens the integrity of the courts and undermines public confidence" and that the very nature of the conduct establishes defendant's culpability.  (Dkt. # 77 at 16).  Defendant responds that the

rewritten notes were merely provided as a part of the discovery process and, thus, the judicial process has not been implicated. (Dkt. # 98 at 9). Defendant also argues that Mr. Tarpley rewrote his notes in good faith without any intention to defraud (as a part of his routine note taking habits) and that Mr. Tarpley considered the rewritten notes to be his "originals," thus rendering his testimony truthful. (Dkt. # 98 at 1-2).

Addressing the third factor first, the evidence clearly reflects an effort on the part of Mr. Tarpley to deceive. Mr. Tarpley was specifically asked about his note taking habits in his first deposition, and he chose not to mention or even hint at any habit of rewriting notes. (Dkt. # 78-1). Rather, he testified, in some detail, that he generally takes notes on a legal pad and then places the notes in a file or, if the issue addressed in the notes is not likely to arise again, he puts the note in the trash. Id. Mr. Tarpley further testified that he would review his files and clean out notes, keeping only those that "had value." Id. When asked whether he wrote "these notes [those originally produced] . . . at the time or shortly after the event," Mr. Tarpley said, "Normally, the notes we have gone over – and I think these fall into it – I'm writing them at the time or shortly after the event." Id. (emphasis added). Finally, Mr. Tarpley testified that his notes were "all made within a few days of whenever the conversation, the meeting or the perception occurred." Id. This testimony would clearly lead the questioner to believe that the originally produced set of notes were the only set of notes made my Mr. Tarpley, that the notes were his "originals" and that the specific documents produced reflected notes taken contemporaneously with, or soon after, the events which the notes were recording. Of course, the truth was something entirely different, making the testimony misleading at best or blatantly untruthful at worst.

At the hearing, Mr. Tarpley explained his deposition testimony by stating that he

considered the rewritten notes to be his "original" notes, so it did not occur to him to mention his note-taking habits during his deposition. Given the specific nature of the deposition questions and the specificity with which Mr. Tarpley responded, this explanation stretches the bounds of credulity. The Court finds that Mr. Tarpley's testimony during his deposition was deceptive and that Mr. Tarpley's testimony during the hearing lacked credibility.

As to the second factor, the Court rejects defendant's argument. It was not the provision of the rewritten notes that implicated the judicial process. It was Mr. Tarpley's lack of candor during his deposition. The judicial process includes all aspects of discovery, including a party's obligation to tell the truth (whether by commission or omission), particularly when giving sworn testimony.

Based on the foregoing, the Court concludes that Mr. Tarpley's conduct during his sworn deposition testimony and at the hearing substantially threatened the integrity of the court and could undermine public confidence if not appropriately addressed. In addition, the court concludes that Mr. Tarpley was culpable in his conduct and, as President of defendant, that culpability may be imputed to defendant under traditional rules of agency. See, e.g., Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 122 (2d Cir. 1998) (defining agency); Cromer Finance Ltd. v. Berger, Nos. 00 Civ. 2284(DLC) & 00 Civ. 2498 (DLC), 2002 WL 826847, at *7-8 (S.D.N.Y. May 2, 2002) (holding that scienter of partner of accounting firm could be imputed to the firm itself under traditional agency principles); In re JDN Realty Corp. Sec. Litig., 182 F.Supp.2d 1230, 1246 (N.D.Ga.2002) (holding that scienter of chief executive officer of defendant corporation was attributable to the corporation).

As to the fourth factor, a warning ". . . is not a prerequisite to the imposition of dismissal sanctions." Chavez v. City of Albuquerque, 402 F.3d 1039, 1045 (10th Cir.2005) (citing

Archibeque v. Atchison, Topeka & Santa Fe Ry. Co., 70 F.3d 1172, 1174 (10th Cir.1995)). "Once a witness swears to give truthful answers, there is no requirement to warn him not to commit perjury or, conversely to direct him to tell the truth. It would render the sanctity of the oath quite meaningless to require admonition to adhere to it." Id. Clearly, Mr. Tarpley gave false, or at a minimum, misleading answers while under oath. Thus, this factor is not a bar to dismissal.

As to the final factor, the Tenth Circuit has made clear that ". . . dismissal represents an extreme sanction appropriate only in cases of willful misconduct. In many cases, a lesser sanction will deter the errant party from further misconduct." Ehrenhaus v. Reynolds, 965 F.2d 916, 920 (10th Cir. 1992) (citing Meade v. Grubbs, 841 F.2d 1512, 1520 (10th Cir.1988); M.E.N. Co. v. Control Fluidics, Inc., 834 F.2d 869, 872-73 (10th Cir.1987); Standard Metals, 817 F.2d 625, 628-29) (10th Cir. 1987). Based on the evidence presented at the hearing, the only plausible explanation for Mr. Tarpley's handwritten notes that is consistent with the evidence is that Mr. Tarpley, in a short period of time, rewrote all of his notes regarding plaintiff and did so in whatever order he pulled them out of his file, which would explain the fact that the notes are not in chronological order. For whatever reason, he then chose not to disclose this fact prior to or during his deposition. However, it is unclear when Mr. Tarpley rewrote his notes and whether the rewritten notes are accurate. More importantly, the Court cannot conclude that Mr. Tarpley intentionally rewrote his notes in order to hide evidence or for the purpose of assisting defendant in this case. Were this his intent, the Court would expect the rewritten notes to have be more clear and far more helpful to defendant's case. The rewritten notes are, in general, ambiguous, sometimes difficult to decipher, and essentially neutral in their benefit to either party. Some examples follow:

>Told Stacey she was doing well w/ OG&E.
>Needs work on Valmont & AFL factory relationship.
>OG&E complimented her at mfg. (except Richard Vinson – Richard still does not like Stacey for some reason)
>Told Stacey to focus on Vinson relationship.
>
>. . .
>
>Issue – If Stacey does not like someone, it shows.  Not good for sales!!
>
>. . .
>
>Met with Stacey in Arlington.
>She asked for a critique.
>I told her she was a skilled sales person.
>Plusses – customer relationships "sense of urgency"
>Areas for improvement – Team player
>>Manufacturer relationships
>>technical skills

(Dkt. # 98-4 at 2-7).  Several of Mr. Tarpley's comments are favorable to plaintiff ("skilled salesperson" and "doing very well"), several are not ("Areas for improvement - Team player" and "Not good for sales"), and they reflect little more than Mr. Tarpley's belief that plaintiff was excelling in some areas and needed to improve in others.

As importantly, defendant made no attempt to use the rewritten notes in this case, either prior to or after plaintiff discovered the notes were not prepared contemporaneously with the events which they purport to record.  The rewritten notes are not a "critical" piece of evidence or a "linchpin" by any stretch of the imagination, and there is no evidence that Mr. Tarpley destroyed his original notes after becoming obligated to preserve them.  In fact, if Mr. Tarpley's rewritten notes are considered by the jury, in combination with Mr. Tarpley's contradictory testimony, they will assist plaintiff, not defendant.  Thus, Mr. Tarpley's conduct does not involve a major issue in this case and the sanction of dismissal would be too severe.

Nonetheless, the Court concludes that Mr. Tarpley's actions, and thus the actions of

defendant, were clearly in bad faith and warrant some sanction in order to deter such conduct in the future. Therefore, defendant is hereby sanctioned and shall pay to plaintiff the following:

(1) the attorneys' fees and costs incurred in re-deposing Mr. Tarpley;

(2) the attorneys' fees and costs incurred in filing the Motion for Sanctions and related briefing (including the reply) and in preparing for and attending the hearing; and

(3) the expert fees incurred by plaintiff for the preparation of Mr. Linville's expert report, for his preparation for the hearing, and for the hearing (no fees will be awarded for Mr. Linville's time in preparing for and attending his deposition or for preparing for or attending trial).[3]

The parties have informed the Court that they have reached an agreement regarding the amount of fees and costs incurred by plaintiff on the items set forth above and that the amount is $40,000.00. The parties have also informed the Court that as part of their agreement, plaintiff has reserved her right to appeal from this Opinion and Order.

Absent some other agreement between the parties, defendant shall comply with this Order on or before November 29, 2010.

SO ORDERED this 5th day of November, 2010.

_____
T. Lane Wilson
United States Magistrate Judge

---

[3] The Court understands that some portion of the sanctions hearing related to the Motions to Exclude, not the Motion for Sanctions; however, those motions had to be considered in order for the Court to consider the motion for sanctions and the experts would never have been necessary had Mr. Tarpley been forthright in the first instance.