IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

STACEY POTTER,                          )
                                        )
                    Plaintiff,          )
                                        )
v.                                      )       Case No. 08-CV-674-GKF-TLW
                                        )
SYNERLINK CORPORATION,                  )
f/k/a PREFERRED REPS, INC.,             )
and PREFERRED SALES                     )
AGENCY, LTD.                            )
                                        )
                    Defendants.         )

## <u>REPORT AND RECOMMENDATION</u>

Before the undersigned United States Magistrate Judge for a Report and Recommendation are the Motion for Attorney's Fees of both plaintiff Stacey Potter and defendants, Synerlink Corporation, f/k/a Preferred Reps, Inc. and Preferred Sales Agency, Ltd. (Dkt. ## 231, 233). The parties' filed responses, and defendants filed a reply. (Dkt. ## 238, 239, 241). All briefs incorporate by reference a prior set of motions and briefing that address the same issue presented here but which were rendered moot when the District Court entered its Amended Final Judgment. (Dkt. ## 199, 207, 222, 226, 227). Both plaintiff and defendants claim entitlement, in some form, to attorney fees. Plaintiff claims she is entitled to fees as the prevailing party, because she obtained a jury verdict. Defendants do not object to plaintiff's request for fees but claim they are entitled to an offset against those fees, because they made a rejected Offer of Judgment, which they argue was in excess of the jury verdict. Plaintiff argues that an offset would be improper.

## <u>Background</u>

Plaintiff asserted two claims: (1) sexual discrimination resulting in wrongful termination under Title VII of the United States Code and resulting in a violation of public policy under

chapter 21 of title 25 of the Oklahoma Statutes; and (2) the failure to pay wages (commissions and vacation pay) under Okla. Stat. tit. 40, § 165.3(B). (Dkt. # 18). On September 20, 2010, the District Court granted summary judgment in favor of defendants on plaintiff's discrimination claim and in favor of plaintiff on her vacation pay claim (in the amount of $6,000.00). (Dkt. # 166). Remaining for trial was the issue of unpaid commissions. Id. On September 24, 2010, defendants made an Offer of Judgment pursuant to Okla. Stat. tit. 12 § 1101.1(B) of $70,000.00 as to "all claims, whether pending, on appeal, or with potential for appeal." (Dkt. # 169). Plaintiff rejected this offer. (Dkt. # 226 at 2).

On October 28, 2010, defendants made a second offer of judgment in the amount of $120,000.00, which states in its entirety:

> Pursuant to 12 O.S. § 1101.1(B), Defendants, Synerlink Corporation and Preferred Sales Agency, Ltd. (collectively, "Defendants"), offer to allow judgment to be taken against them in the total amount of $120,000.00, including attorneys' fees and costs. If accepted, this amount will resolve all claims, whether currently pending, on appeal, or with potential for appeal.

> This Offer of Judgment is made solely for the purpose specified in 12 O.S. § 1101.1(B), and is not to be construed either as an admission that Defendants are liable in this action or that Plaintiff, Stacey Potter, has suffered any damage.

> This offer shall remain open for fourteen (14) days. If you choose not to accept this offer, pursuant to 12 O.S. § 1101.1(B)(3), you will be responsible for Defendants' reasonable litigation costs and reasonable attorney fees incurred from and after the date of this offer in the event a judgment is obtained in an amount less than that offered herein.

(Dkt. # 222-1) (footnotes omitted). Okla. Stat. tit. 12 § 1101.1(B), the statutory basis for defendants' offer, reads as follows:

> After a civil action is brought for the recovery of money or property in an action other than for personal injury, wrongful death or pursuant to Chapter 21 of Title 25[1] or Section 5 of Title 85 of the Oklahoma Statutes, any defendant may file

---

[1] Chapter 21 of Title 25 is commonly known as the Oklahoma Anti-Discrimination Act (OADA).

with the court[2], at any time more than ten (10) days prior to trial, an offer of judgment for a sum certain to any plaintiff with respect to the action or any claim or claims asserted in the action. An offer of judgment shall be deemed to include any costs and attorney fees otherwise recoverable unless it expressly provides otherwise. If an offer of judgment is filed, the plaintiff or plaintiffs to whom the offer of judgment is made shall, within ten (10) days, file:

    a. a written acceptance or rejection of the offer, or

    b. a counteroffer of judgment, as described in paragraph 2 of this subsection.

If a plaintiff fails to file a timely response, the offer of judgment shall be deemed rejected. The fact an offer of judgment is made but not accepted or is deemed rejected does not preclude subsequent timely offers of judgment.

Id. (footnotes added). Plaintiff rejected the second offer as well. It is this rejection that forms the basis of defendants' claim that they are entitled to attorney fees as an offset. (Dkt. ## 222, 226 at 2).

Plaintiff's claim for unpaid commissions proceeded to trial, and plaintiff was awarded $47,244.83 for her commissions in addition to the $6,000.00 vacation pay. (Dkt. # 229). The Court further ordered pre-judgment interest beginning from November 14, 2008, in the amount of 6% as well as post judgment interest at 0.19%. Id. Plaintiff subsequently requested $45,469.00 in attorney fees. (Dkt. # 199). The fee request was not objected to by defendants. (Dkt. # 207). However, defendants now seek to offset plaintiff's judgment with the attorney fees and costs they incurred after the second offer of judgment was made. (Dkt. # 222). The amount of the requested offset is $69,671.84. Id. Plaintiff objects to this amount, arguing that the second offer of judgment was invalid and, in the alternative, that the amount of fees sought is unreasonable. (Dkt. # 226 at 2).

---

[2] This Court held in Scottsdale Ins. Co. v. Tolliver, 636 F.3d 1273 (10th Cir. 2011) that when using this statute in federal courts, a defendant would not be required to file the offer of judgment with the court as doing so would be in contravention of Rule 68(b) of the Federal Rules of Civil Procedure.

**<u>Discussion</u>**

Since defendants do not object to plaintiff's motion for attorney fees, the undersigned recommends that it be granted.

As to defendants' motion, plaintiff argues that it should be denied, because defendants' second offer of judgment was invalid for the reason that it included claims already resolved on summary judgment, and for the reason that it was internally inconsistent. Alternatively, plaintiff argues that defendants' motion should be denied, because the second offer of judgment, when broken into components, was less than the awarded judgment. (Dkt. # 226). Finally, plaintiff asserts that the amount of defendants' requested fees is unreasonable.[3] Defendants, of course, assert that their second offer was proper, valid, and greater than the awarded judgment. (Dkt. # 227). They also argue that their fees were reasonable.

**Effect of the Court's Decision on Summary Judgment**

Plaintiff asserts that since the second offer of judgment was to "resolve *all* claims, whether currently pending, on appeal, or *with potential for appeal,*" the offer must necessarily include the discrimination claims on which defendants had already prevailed on summary judgment. (Dkt. # 226 at 5, 6). Thus, plaintiff argues that because an offer of judgment under Section 1101.1(B) can only be made on issues "proceeding towards trial," defendants' second offer, which included claims not proceeding towards trial, was invalid. <u>Id.</u> Defendants do not dispute that their second offer of judgment included a claim that was disposed of on summary judgment but argue that this fact does not invalidate the offer. (Dkt. # 227). The undersigned agrees with defendants.

---

[3] Plaintiff originally objected to defendants' motion on the ground that it was premature, since no final judgment had been entered. (Dkt. # 226 at 22-23). Since a final judgment has now been entered, this argument is moot.

There is nothing in Section 1101.1(B) that allows offers of judgment only on claims "proceeding toward trial." Rather, the express language of this section applies "… to the action or any claim or claims asserted in the action." <u>Id.</u> Defendants' second offer of judgment certainly fits this description, as it applied to "all claims, whether currently pending, on appeal, or with potential for appeal." <u>Id.</u> Nothing in this description would take defendants' offer outside the scope of the Section 1101.1(B) language. Moreover, none of the cases cited by plaintiff require such a result.

For example, plaintiff cites <u>Shersen v. Cholish</u>, 2010 WL 1626930 (M.D. Pa. April 20, 2010). In <u>Shersen</u>, the court granted summary judgment in favor of one of the defendants on all claims before the defendants' offer of judgment expired. <u>Id.</u> The plaintiff immediately accepted the defendants' offer, and the court's clerk entered judgment in favor of plaintiff. <u>Id.</u> The defendants sought relief from the resulting judgment. <u>Id.</u> In analyzing the defendants' request, the court first noted that "when a district court grants judgment in favor of a defendant during the fourteen-day window prescribed by Rule 68, courts have come to diametrically opposed views on how the summary judgment should affect the offer of judgment." <u>Id.</u> <u>Shersan</u> then turned to an Eighth Circuit decision, <u>Perkins v. U.S. West Communications, Inc.</u>, 138 F.3d 336 (8th Cir.1998)): ". . . the plain language of Rule 68 mandates that an offer of judgment remain valid and open for acceptance for the full ten-day period outlined in the Rule despite an intervening grant of summary judgment by the district court." <u>Shersan</u> (quoting <u>Perkins</u>, 138 F.3d at 339).[4] In <u>Perkins,</u> the Eighth Circuit provided the following reasoning:

> The Rule contemplates invalidity of the offer only in instances where the offer is made less than ten days before the commencement of trial. Here, however, no trial date had been set and, despite a pending summary judgment motion and despite the absence of any exigencies associated with an impending trial date, U S West

---

[4] <u>Shersan</u> notes, however, that the language of Rule 68 has changed since <u>Perkins</u>, now providing that there is a fourteen (14) day window to accept an offer of judgment.

made a strategic decision to make an offer of judgment under Rule 68. Because the offer was not conditioned upon the District Court's not granting U S West's motion for summary judgment prior to Perkins's acceptance of the offer, U S West assumed the risk that the District Court would rule favorably on U S West's summary judgment motion during the ten-day period for acceptance of its Rule 68 offer. U S West took the chance that it could bring an end to this litigation for $3,000 (plus costs, interest, and attorney fees) pursuant to its Rule 68 offer and was unpleasantly surprised to find that, had it waited for the District Court's ruling on the summary judgment motion, it could have brought an end to this litigation for much less. The District Court did not err in concluding that the offer of judgment remained open for the full ten-day period despite the intervening grant of summary judgment.

138 F.3d at 339.

Next, Shersan looked to a district court decision out of the Third Circuit, Smith v. Southeastern Pennsylvania Transportation Authority, 258 F.R.D. 300 (E.D.Pa. 2009). In Smith, as in Perkins, the defendant made an offer of judgment, after which, the district court granted the defendant's pending motion for summary judgment in its entirety, effectively ending the litigation. The plaintiff quickly accepted the offer. However, the Smith court held that "once the [district] court entered summary judgment for the defendant, the plaintiff could no longer accept the outstanding offer of judgment, and the Clerk of Court had no authority to enter judgment under Rule 68." 258 F.R.D. at 302. The Smith court reasoned:

> This court granted summary judgment in favor of defendant pursuant to Rule 56 and thereby ended the litigation. Aware of that fact, plaintiff nonetheless "accepted" the outstanding Rule 68 offer and thereby took steps to override our considered judgment through a ministerial act of the Clerk of Court. Nothing in the plain language or history of Rule 68 compels us to allow such an extraordinary result.
> . . .
> Otherwise, the plaintiff would be able to vitiate unilaterally a final order of this court. Moreover, since summary judgment had already been entered and the case had come to an end, permitting the second judgment to stand would in no way effectuate the purpose of Rule 68, which is to encourage settlement, and would not "secure the just, speedy, and inexpensive determination of ... [the] action," under Rule 1.

Id. Relying on Smith, the Shersen court reasoned:

When a district court grants summary judgment in favor of the offering party, it enters judgment in favor of that party. At that point, the defendant can no longer offer a judgment because a judgment has already been entered by the district court. As such, the defendant's Rule 68 offer becomes a nullity with respect to that party. The defendant can no longer offer judgment to defendant "on specified terms" as prescribed by Rule 68 because the terms of the judgment have already been decided by the district court when rendering its summary judgment opinion. To hold otherwise would create a scenario where there were two competing judgments: the summary judgment entered in favor of the defendant by the district court, and the judgment offered by defendant and accepted by plaintiff after the court has entered summary judgment. The judgment of the Court is paramount as the case against Defendant Cholish is over and there is nothing to resolve by way of the Offer of Judgment.

2010 WL 1626930 at *2.

Plaintiff uses the reasoning in <u>Smith</u> and <u>Shersen</u> to argue that once a court enters summary judgment, no offer of judgment can be accepted (or presumably, made) with respect to those claims that are subject to the court's ruling. Plaintiff reads these cases too broadly. Unlike in <u>Smith</u> and <u>Shersan</u>, defendants in this case made their offer of judgment <u>after</u> they had been granted <u>partial</u> summary judgment. Thus, the case against them remained pending and was not "over." Moreover, unlike in <u>Smith</u> and <u>Shersen</u>, the goal of Rule 68 is effectuated by allowing a defendant to include in an offer of judgment those claims that have been disposed of, so long as other claims remain pending, particularly since partial summary judgment rulings are interlocutory and can be revisited at any time under the court's general discretionary authority. <u>See</u>, <u>e.g.</u>, <u>Fye v. Oklahoma Corp. Com'n</u>, 516 F.3d 1217, 1223 n.2 (10th Cir. 2008) (partial summary judgment is interlocutory ruling that can be revisited until entry of a final judgment). Plaintiff's approach would have the odd effect of allowing a defendant to make an offer of judgment with respect to those claims that remained for trial while having no ability to make such an offer with respect to other claims that were the subject of an interlocutory ruling and which could be revisited by the court at any time.

Moreover, this case does not involve an effort by one party to avoid one judgment by accepting another. To the contrary, after obtaining partial summary judgment, defendants attempted to resolve the entire case by making an offer of judgment, which clearly included all claims, whether pending or subject to appeal. That is the very purpose of Rule 68, and the undersigned can find no authority for the proposition that Section 1101.1 should be read differently. In fact, as addressed above, the very text of Section 1101.1 seems to indicate otherwise (applies to ". . . any claim or claims asserted in the action."). The undersigned rejects this argument.

**The Validity of the Second Offer Under the Terms of Okla. Stat. Tit. 12, § 1101.1**

The language of Section 1101.1 provides two alternate, and mutually exclusive, classes of claims for which a defendant may make an offer of judgment. Defendants utilized Subpart B, quoted above, in making the second offer. Subpart A applies only when a "civil action is brought for the recovery of money as the result of a claim for personal injury, wrongful death, or pursuant to Chapter 21 of Title 25 or Section 5 of Title 85 of the Oklahoma Statutes." Okla. Stat. tit. 12 § 1101.1(A). "Chapter 21 of Title 25" is the OADA. Plaintiff argues that she brought her discrimination claim under the OADA, and, thus, any settlement offer which "resolve[s] *all* claims, whether currently pending, on appeal, or *with potential for appeal*" as the second offer asserts, must necessarily include the OADA claim, which can only be the subject of an offer of judgment under Subpart A. (Dkt. # 226 at 7). Since the second offer was made pursuant to Subpart B, plaintiff argues that it was invalid. Id. Alternatively, plaintiff asserts that if defendants' offer was valid, "at least $100,000 of their offer must be applied to Plaintiff's OADA claim pursuant to § 1101.1, which leaves only $20,000 to the wage claim. Plaintiff's

judgment is more than $20,000 on the wage claim; thus, Defendants are not entitled to recover costs or fees." (Dkt. # 226 at 9).

Defendants argue that plaintiff never asserted a claim under the OADA and that plaintiff's reference to the OADA was solely for the purpose of establishing that Oklahoma has a strong public policy against gender discrimination. (Dkt. # 227 at 3). Defendants also cite the district court's grant of summary judgment, which does not refer to the OADA, and to plaintiff's acknowledgment that the OADA does not provide a private right of action for gender discrimination.[5] Id. The undersigned finds defendants' argument persuasive.

Plaintiff's first Complaint asserted two counts: a federal claim under Title VII of the Civil Rights Act of 1964, and a wage claim under Okla. Stat. tit. 40, § 165.3(A). (Dkt. # 2). Plaintiff's First Amended Complaint adds a claim for wrongful discharge in violation of Oklahoma public policy "under the authority of Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989) and Kruchowski v. Weyerhauser Co., 2008 WL 5238495, 2008 OK 105." (Dkt. # 18 at 2). Plaintiff cites the OADA as the basis for the public policy which she claims was violated, but, as defendants argue, plaintiff does not assert a distinct claim under the OADA. Id. at 5. Plaintiff's Second Amended Complaint includes the same claims asserted in her First Amended Complaint and the same reference to the OADA. In addition, in granting summary judgment against plaintiff, the District Court did not consider, or rule on, a claim under the OADA, and neither party requested such a ruling. (Dkt. # 168 at 7-8). Rather, the District Court specifically addressed plaintiff's Title VII claim and plaintiff's "public policy wrongful discharge claim . . .," stating that "plaintiff's gender-based Burk tort claim will fail or succeed for the same reason as the related federal claim." Id.

---

[5] Plaintiff acknowledges that the OADA, by its terms, does not provide a private right of action for victims of gender discrimination; however, plaintiff argues that the statute, under existing Oklahoma Supreme Court authority, should be interpreted so as to provide such a right.

Plaintiff's assertion of a <u>Burk</u> tort claim is clearly not the same as asserting a claim under the OADA. If there were any doubt about this conclusion, the Oklahoma Supreme Court's decision in <u>Tate v. Browning-Ferris, Inc.</u>, 833 P.2d 1218 (Okla. 1992) makes it clear. In <u>Tate</u>, the Oklahoma Supreme Court considered the following certified question from the United States District Court for the Western District of Oklahoma in the context of a racial discrimination case:

> Where an at-will employee terminated by a private employer files suit alleging facts that, if true, violate state and federal statutes providing remedies for employment discrimination, can the employee-plaintiff state a tort cause of action based on the same facts, pursuant to the public policy exception to the at-will termination rule, recently recognized by the Oklahoma Supreme Court in <u>Burk v. K-Mart</u>, 770 P.2d 24 (Okla. 1989)?

<u>Id.</u> In answering the question in the affirmative, the Oklahoma Supreme found that the OADA is not the "sole" remedy for discriminatory practices and, in fact, only provides for a private right of action in handicap discrimination cases. The court reasoned as follows:

> The [OADA] does not provide a private right of action to a person aggrieved by racially discriminatory practices if the Commission does not resolve the claim to his satisfaction. In contrast, it does afford a private right of action for discrimination based on handicap. Were we today to construe the statute as having established the sole remedy for racially discriminatory practices, we would create a dichotomous division of discrimination remedies contrary to Art. 5 § 46 of the Oklahoma Constitution. There would be a more generous remedy for victims of handicap discrimination than for those who suffered from racial discrimination. For remedial purpose, discrimination victims comprise a single class. Our Constitution absolutely interdicts the passage of special law that would sanction disparate remedies for those who complain of employment discrimination.
>
> Interpreting the [OADA] liberally, as we must, in furtherance of its general purposes, we are not persuaded that common-law rights stand abrogated for workers who claim to have been discharged under the circumstances alleged by the plaintiff in this case. Most importantly, we find no textually demonstrable legislative intent to make the Title 25 remedies for racial discrimination exclusive. The growth of the common law in the area of master/servant relationship will not be stunned by legislative silence. We find no obstacle to applying Burk's common-law tort to a racially motivated wrongful or retaliatory discharge. In short, the employee who brings a common-law tort action for damages occasioned by either a racially motivated discharge or by one in retaliation for bringing a

racial discrimination complaint states a state-law claim for tortious employment termination under Burk.

Id. at 1229-31 (footnotes omitted). In 2009, the Tenth Circuit, in an unpublished opinion, cited a portion of Tate in reiterating this view:

> Nor do we find any recognition in the opinions of the Oklahoma Supreme Court that the OADA provides a private right of action for victims of employment discrimination other than those who are handicapped. In Tate v. Browning-Ferris, upon which Sims relies heavily, the Oklahoma Supreme Court considered the remedies available to an alleged victim of racial discrimination and retaliation. At the heart of its analysis was its determination that
>
>> "[t]he Act here in contest [the OADA] does not provide a private right of action to a person aggrieved by racially discriminatory practices if the Commission does not resolve the claim to his satisfaction. In contrast, it does afford a private right of action for discrimination based on handicap."
>
> Tate, 833 P.2d at 1229. While it is true that the court viewed the OADA's provision of disparate remedies to victims of discrimination in employment as potentially violative of the Oklahoma Constitution, id. at 1229-30, it is equally true that the court did not resolve the problem by construing the OADA to imply a private right of action for all victims of employment discrimination. Rather, the court construed the OADA as not establishing "the sole remedy for racially discriminatory practices," which left victims of racial discrimination free to pursue common-law claims, including a tort claim for wrongful discharge in violation of public policy. Id. at 1230-31.

Sims v. Halliburton Co., 185 F.3d 875, 1999 WL 495629 (10th Cir. 2009) (unpublished) (emphasis added).

Thus, plaintiff's assertion of a Burk tort claim did not result in the assertion of a claim under the OADA, since there is no such private right of action. Therefore, Section 1101.1(A) does not apply to plaintiff's discrimination claim, and Section 1101.1(B), under which the second offer was made, applies to all of plaintiff's claims. As a result, there is no inconsistency in the second offer, and the undersigned finds that it was a valid offer under Section 1101.1(B).[6]

---

[6] This finding necessarily eliminates plaintiff's alternative argument that $100,000.00 of the offer of judgment should be designated to "the OADA" claim.

**Impact of the Second Offer of Judgment**

Defendants' offer of judgment was in the amount of $120,000.00. Plaintiff was awarded $53,244.83 on her claim for unpaid commissions and unpaid vacation pay. Defendants do not dispute plaintiff's claim for attorney fees in the amount of $45,469.00, and defendants agree that plaintiff is entitled prejudgment interest in the amount of $9,803.30. (Dkt. # 233 at 2). Thus, plaintiff's total award is $108,517.13, well short of defendants' offer, so defendants are entitled to an offset in the amount of their reasonable attorney fees incurred after the offer was made (as provided in Section 1101.1).[7] As to defendants' costs, the undersigned recommends that defendants' request for costs be referred to the Court Clerk for a determination of the amount of costs, if any, that are awardable in light of defendants' valid offer of judgment. Defendants' fee request is analyzed below.

**Amount of the Offset**

The Oklahoma Supreme Court has outlined a two-step procedure for arriving at a reasonable attorney fee: (1) determine the lodestar fee, which is the reasonable hourly compensation on an "hours times rate basis", and (2) enhance or reduce the lodestar fee, if warranted, by adding or subtracting an amount arrived at by applying the factors set forth in Burk v. City of Oklahoma City, 598 P.2d 659 (Okla. 1979).[8] Atwood v. Atwood, 25 P.3d 936, 951 n.21 (Okla. 2001); Morgan v. Galilean Health Enterprises, Inc., 977 P.2d 357, 364 (Okla. 1998); Arkoma Gas Co. v. Otis Engineering Corp., 849 P.2d 392, 394 (Okla. 1993) (affirming trial court's use of Burk factors to reduce award of attorney fees); Southwestern Bell Telephone

---

[7] Scottsdale Ins. Co. v. Tolliver, 636 F.3d 1273 (10th Cir. 2011) (holding that when Okla. Stat. tit. 12 § 1101.1 is used in federal court, the amount of the award will follow Section 1101.1 and the procedure will be governed by Fed. R. Civ. P. 68).

[8] Although neither party specifically addresses the issue, the authority cited by both sides indicates that they believe Oklahoma law is applicable to a determination of the amount of fees awardable.

Co. v. Parker Pest Control, Inc., 737 P.2d 1186, 1189 (Okla. 1987); Staton v. Guarantee State Bank, 178 P.3d 186, 189 (Okla.Civ.App. 2007) (noting that use of time as a sole standard is of dubious value, thereby authorizing the court to enhance or reduce the hours based on the factors set forth in Burk). In addition, although the determination of reasonableness and the amount of the fee award are generally left to the sound discretion of the district court, Arkla Energy Resources v. Roye Realty and Developing, Inc., 9 F.3d 855, 865 (10th Cir. 1993), the Oklahoma Supreme Court requires that an attorney fees award bear some reasonable relationship to the amount in controversy. Id.; Morgan v. Galilean Health Enterprises, Inc., 977 P.2d 357, 364 (Okla. 1998); Southwestern Bell Telephone Co., 737 P.2d at 1189.

The factors set out in Burk are:

1.      time and labor required,

2.      the novelty and difficulty of the issues,

3.      the skill required to perform the legal service properly,

4.      the preclusion of other employment due to acceptance of the case,

5.      the customary fee,

6.      whether the fee was fixed or contingent,

7.      the time limitations imposed by the client or the circumstances,

8.      the amount involved and the results obtained,

9.      the experience, reputation and ability of the attorneys,

10.      the undesirability of the case,

11.      the nature and length of the professional relationship with the client, and

12.      the awards in similar cases.

<u>Burk</u>, 598 P.2d at 661. <u>See</u> <u>also</u> <u>Harolds Stores, Inc. v. Dillard Dept. Stores, Inc.</u>, 82 F.3d 1533, 1553 (10th Cir. 1996).

Defendants seek an offset of $67,692.50 for attorney fees they incurred after serving the second Offer of Judgment. Plaintiff argues that the fees defendants seek to shift to plaintiff are not reasonable for a number of reasons.

First, plaintiff argues that the hourly rate of $315.00 for 122.2 hours[9] sought by defendants for attorney Lankford's trial preparation is unreasonable. Plaintiff argues that Ms. Lankford's hourly rate is excessive for an attorney trying her first jury trial and, in any event, for an associate attorney in the Tulsa area. In support of their application for attorney fees, defendants have provided an affidavit from Ms. Lankford in which she states that she has been in practice since 2002, has performed work in this case at a rate of $315.00 per hour, that her work in this case focused on trial preparation, and that she is "familiar with the reasonable and necessary fees charged by attorneys in Dallas, Texas for similar work." (Dkt. # 222-2 at 3). She also states that she has focused her work as an attorney in the area of employment law, including wage and commission cases. <u>Id.</u> In addition, defendants point to an affidavit from their local counsel and one executed by plaintiff's counsel. These affidavits establish that defendants' local counsel has 25 years of experience and charges $295/hour and that plaintiff's counsel has a standard billing rate of $250/hour, although he billed only $225/hour in this case (an amount which he claimed was "lower than would be customary"). (Dkt. # 222-2 at 5-6). Based on these affidavits, defendants argue that Ms. Lankford's billing rate is reasonable for the Dallas market, where she maintains her office.

---

[9] The number of hours actually sought by defendants for Ms. Lankford's work is 127.6, not 122.2; therefore, the undersigned's analysis is based on 127.6 hours.

In response, plaintiff correctly notes that the burden is on defendants to establish that the requested rates are consistent with those prevailing in the Tulsa area for counsel with similar experience. Ellis v. University of Kansas Medical Center, 163 F.3d 1186, 1203 (10th Cir. 1998) (burden on party seeking fee award "of showing that the 'requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'") (quoting Malloy v. Monahan, 73 F.3d 1012, 1018 (10th Cir. 1996)); CEP Mid-Continent, LLC v. Turkey Creek, LLC, 2010 WL 582207, *2 n.2 (N.D. Okla. 2010) ("The party seeking a fee bears the burden of showing that the requested rates are in line with those prevailing in the Tulsa community for similar services by lawyers of reasonably comparable skill, experience, and reputation."). Defendants have failed to meet this burden with regard to the requested $315.00 per hour rate in that they have not presented any evidence regarding an appropriate hourly rate for someone of Ms. Lankford's experience who practices in the Tulsa area.

Plaintiff urges the Court to reduce Ms. Lankford's hourly rate so that it is in a range from $125.00 to $150.00. Plaintiff cites the rates charged by her own counsel in this case. (Dkt. # 226 at 18). As stated above, plaintiff's lead trial counsel, a partner with thirty years of experience, charged an hourly rate of $225.00 in this case; the associate retained by plaintiff charged an hourly rate of $150.00; another partner, with less experience than plaintiff's lead trial counsel, charged an hourly rate of $195.00. (Dkt. # 199 at 4). Of course, plaintiff's lead counsel admits that the $225.00 per hour rate is lower than "would be customary." In addition, defendants' lead trial counsel, although an associate, had far more responsibility in this case than either the associate utilized by plaintiff or the less experienced partner. Taking all of the evidence into consideration, the undersigned recommends a rate of $210.00 per hour for defendants' lead trial

counsel. This rate recognizes that Ms. Lankford was the lead counsel in this case, a role that warrants a significantly higher rate than that of a second chair associate with less experience. The rate also recognizes the fact that the remaining two attorneys who played an active role in this case, both with significantly more experience than Ms. Lankford, have customary hourly rates of $250.00 and $295.00 respectively. In addition, the $210.00 per hour rate, based on the undersigned's experience, is consistent with the rates awarded to parties' retaining similarly experienced attorneys in the Tulsa area.

Based on the foregoing, the undersigned recommends a reduction of $105.00 per hour multiplied by the 127.6 hours sought by defendants, or $13,398.00.

Second, plaintiff argues that the issues in this case were simple, noting that defendants "stipulated to the amount of commissions due, if due, and that both defendants, for the purposes of the pending trial, were to be considered Plaintiff's employers." (Dkt. # 226 at 19). Plaintiff argues that these stipulations simplified the trial to a single issue: whether defendants owed plaintiff for unpaid commissions. Plaintiff also notes that the trial was only one and a half days. Plaintiff argues that defendants "seek fees to prepare for a simple short trial in the amount nearly twice what Plaintiff expended for the entire lawsuit beginning to end." Id. at 14. Plaintiff does not, however, challenge any specific time entry. Moreover, plaintiff's last statement is misleading. Plaintiff's counsel spent 247.2 hours on this matter through trial, but approximately 200 of those hours occurred during the same time period for which defendants seek fees for 218.8 hours. (Dkt. ## 200, 222). The difference in dollar amounts is due to the billed rates of defendants' counsel as compared to those of plaintiff's counsel, and the difference in hours is not unreasonable. The undersigned recommends that the District Court reject this argument.

Third, plaintiff argues that defendants' counsel improperly engaged in ". . . block billing so that the work done on any task cannot be determined." Id. Plaintiff is correct that "[w]here block billing makes it difficult, if not impossible, for the Court to determine the amount of time spent on specific tasks, a general reduction in attorney fees may be warranted." Southwest Stainless, LP v. Sappington, 2010 WL 1486927, *15 (N.D. Okla. 2010) (quotations omitted) (unpublished). However, plaintiff does not identify a single time entry that would support such a finding in this case, opting instead for a general accusation that defendants, because of the block billing, seek fees for work that should not be recoverable. In addition, although defendants' counsel did engage in block billing (dkt. # 222-2), doing so in this case does not compromise defendants' fee application as much as it otherwise might since apportionment between claims is not necessary. Rather, defendants are entitled to recover any fees reasonably incurred after their second offer of judgment.

Nonetheless, block billing can create a problem if it prevents the Court from determining whether time spent on a specific task is reasonable. For example, in her November 2, 2010 time entry, Ms. Lankford billed 5.4 hours to a wide variety of tasks, including drafting a pretrial order, reviewing rulings on motions in limine, preparing a trial brief, and assisting a paralegal with a document production issue. All of this time may be reasonable, but there is no way for the undersigned to make that determination, because the time records do not indicate, for example, whether Ms. Lankford spent .1 hours, 1.1 hours, or some other amount, reviewing the Court's rulings. Two short minute orders were entered on November 2, so the first amount would be reasonable but the second would be gross over billing. In addition, defendants' time records (as identified by plaintiff) include entries for time incurred on a motion for sanctions that was granted against defendants. It would be unreasonable for defendants to recover such fees.

Therefore, in order to adjust for the uncertainty created by defendants' block billing and the time that defendants improperly seek, the undersigned recommends a 10% reduction to be applied after the other reductions identified herein.

Fourth, plaintiff argues that defendants should not recover time for partner, M. Scott McDonald to essentially supervise Ms. Lankford. Plaintiff further argues that the time entries for several unidentified persons, such as "SAR," "BAB," and "JRR," should not be allowed. Plaintiff assumes that two of these persons are administrative staff and argues that "administrative tasks should not be awarded and secondly, any rate for people in these categories is way beyond what some Tulsa lawyers charge." (Dkt. # 226 at 20). The undersigned does not need to reach any of these arguments, since defendants have provided no evidence as to the reasonableness of the hourly rates of any of these persons, not to mention their experience and qualifications to perform the work represented in the invoices.[10] Doing so is defendants' burden. They have met this burden only with respect to Ms. Lankford and Mr. Snapp (as limited above). Thus, the undersigned recommends that any fee request for time keepers other than Ms. Lankford and Mr. Snapp be disallowed. This amount equals $9,769.00.

Fifth, plaintiff argues that defendants should not recover fees incurred on matters where they were unsuccessful or where they filed a motion in limine seeking to exclude evidence that plaintiff never intended to offer. On the latter issue, plaintiff argues that a phone call would have resolved the matter without the need to draft and/or file motions. Section 1101 allows a party to recover their reasonably incurred attorney fees. The undersigned is not aware of any case, and

_____

[10] Defendants' lead counsel's affidavit states merely that she "reviewed Littler Mendelson, P.C.'s records regarding the attorneys' fees incurred by Defendants. . ." and that "I performed this work at a rate of $315 per hour. . .." (Dkt. #222-3 at 3). She also states that the "fees Little Medelson, P.C. charged are customarily charged in Dallas, Texas for the same or similar services for attorneys with our experience, reputation, and ability. . .." Id. These statements are merely conclusory and fall far short of providing the necessary information to evaluate the rates charged and hours spent by the co-workers of defendants' lead counsel.

plaintiff cites none, that links reasonableness to whether or not a party prevails on an individual motion, particularly pre-trial, non-dispositive motions. In addition, without more information, the undersigned cannot say whether defendants' counsel's decision to file a motion in limine, rather than contact plaintiff's counsel first, was unreasonable. In fact, plaintiff has not even identified the specific motion in limine to which she refers. Thus, the undersigned recommends that this argument be rejected.

Finally, plaintiff asserts that "[t]he hours submitted by Mr. Snapp appear to contain duplicative work done by Ms. Lankford, and further the rate of $295.00 per hour for such a simple matter appears to be excessive." Plaintiff does not identify the time entries that "appear to contain duplicative" work, so the undersigned rejects this argument.[11] However, the undersigned agrees that the hourly rate, for the issues that were tried and litigated in this case, is slightly excessive. The regular hourly rate ordinarily charged by plaintiff's lead counsel of $250.00, as opposed to the rate charged in this litigation, is certainly appropriate in this case and is, quite possibly, low. Based on Mr. Snapp's affidavit, and the other evidence submitted in this case, the undersigned recommends a ten percent (10%) reduction in Mr. Snapp's hourly rate. This amounts to $1,772.95 ($17,729.50 times .10).

Based on the foregoing, the undersigned recommends a fee award to be offset against plaintiff's judgment in the amount of $38,477.30, as detailed below. As required by the Oklahoma Supreme Court, this amount is both reasonable and bears a reasonable relationship to the amount in controversy.

---

[11] Additionally, the undersigned has reviewed Mr. Snapp's time entries and finds nothing out of the ordinary or excessive.

**Burk Factors**

The undersigned has considered each of the Burk factors and does not find that an enhancement is warranted. By way of example, the time and labor required for this matter was not extraordinary. There were no new or novel issues, and the issues were not difficult. Although defendants' counsel is skilled, the case did not require skill that was out of the ordinary. Defendants do not claim that their counsel was precluded from accepting other employment, and the fee arrangement was hourly, not contingent. Thus, the undersigned recommends that the Court not enhance the offsetting fee award recommended here.

## Recommendation

The undersigned recommends that:

1. Defendants' request for costs be referred to the Court Clerk for a determination of the amount of costs, if any, that are awardable in light of defendants' valid offer of judgment;

2. Plaintiff's Motion for Attorney's Fees in the amount of $45,469.00 be granted;

3. Defendants' Motion for Attorney's Fees be granted in part and denied in part and that defendants be awarded an offset against plaintiff's Judgment in the amount of $38,477.30, calculated by reducing defendants' requested fee of $67,692.50 by:

   a. Reducing Ms. Lankford's hourly rate to $210.00 per hour, resulting in a reduction of $13,398.00;

   b. Eliminating the fee request for all timekeepers except Ms. Lankford and Mr. Snapp, resulting in a reduction of $9,769.00;

   c. Reducing Mr. Snapp's hourly rate by 10%, resulting in a reduction of $1,772.95; and

   d. Reducing the remaining amount by 10% for block billing, resulting in a reduction of $4,275.26.

## Objection

The District Judge assigned to this case will conduct a *de novo* review of the record and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned. As part of her review of the record, the Judge will consider the

parties' written objections to this Report and Recommendation. A party wishing to file objections to this Report and Recommendation must do so by May 10, 2012. <u>See</u> 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file written objections to this Report and Recommendation may bar the party failing to object from appealing any of the factual or legal findings in this Report and Recommendation that are accepted or adopted by the District Court. <u>See</u> <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991); and <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

SUBMITTED this 26th day of April, 2012.

_____
T. Lane Wilson
United States Magistrate Judge